**Paul Mack ALLEN, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09-85-285 CR.**

Court of Appeals of Texas, Beaumont.

June 29, 1988.

Rehearing Denied July 28, 1988.

C.M. Bradford, Beaumont, for appellant.

Tom Maness, Criminal Dist. Atty. and Larry Eastepp, Asst. Criminal Dist. Atty., Beaumont, for appellee.

## OPINION AFTER REMAND TO THE TRIAL COURT FOR BATSON HEARING

DIES, Chief Justice.

A jury found Appellant guilty of the offense of burglary of a building. After finding the enhancement allegations in the indictment to be true, the jury assessed punishment at ninety-five years' confinement in the Texas Department of Corrections. Appellant then perfected his appeal to this court.

This court overruled each of Appellant's points of error and affirmed the trial court's judgment. *Allen v. State*, 722 S.W.2d 514 (Tex.App.—Beaumont 1986). Appellant petitioned the Court of Criminal Appeals for review of this court's holding that the United States Supreme Court's ruling in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was not retroactive. The Court of Criminal Appeals vacated the decision of this court because, after this court's opinion was delivered, the United States Supreme Court held that the *Batson* decision should be applied retroactively. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed. 2d 649 (1987). The Court of Criminal Appeals remanded the cause to this court with instructions that we abate the appeal and order the trial court to make the determinations described in *Batson*. *Allen v. State*, No. 096–87 (Tex.Crim.App. March 23, 1988).

Upon remand, this court abated the appeal and remanded to the trial court with orders to make the determinations called for by the Court of Criminal Appeals. On May 23, 1988, the trial court held a *Batson* hearing, and on June 8, 1988, we received the record of the hearing and the trial court's findings of fact and conclusions of law. After a thorough review of the entire record, including the hearing and the findings and conclusions of the trial court, we now address Appellant's points of error numbers two and three, concerning discriminatory use of peremptory challenges by the prosecutor. In his points of error numbers two and three, Appellant urges that the trial court erred in overruling his motion to quash the jury panel and motion for mistrial, respectively.

Prior to voir dire examination, Appellant urged the trial court to quash the jury panel because only nine of the thirty-six members of the venire were black and Appellant was black. Appellant's counsel also argued that the State could use its ten peremptory strikes to eliminate all blacks from the jury. Furthermore, counsel stated that the representation of blacks on the panel was unfairly low and not large enough to insure Appellant a fair trial. The trial court overruled the motion to quash.

Then, voir dire examination was conducted, but no record of this stage of the trial was requested and none was made. After a short recess, the jury was seated and sworn, the indictment was read and Appellant pleaded "not guilty." The State called its first witness and direct and cross-examination were conducted. The State then called its second witness. After the State's direct examination, Appellant's counsel began his cross-examination. Then, a lunch recess was declared.

After the lunch recess, Appellant's counsel made a motion for mistrial based upon the prior motion to quash the jury panel. Counsel further stated that "the result was that all blacks were eliminated, and this jury is made up of only whites" so as to deny Appellant his right to a fair trial and due process. The trial court overruled Appellant's motion for mistrial.

■ In his second point of error, Appellant argues that systematic exclusion of persons of the same race as an accused may be accomplished by the use of racially motivated peremptory strikes as well as by other means. After the United States Supreme Court decision in *Batson,* we cannot disagree with such a proposition. However, Appellant's motion to quash the jury panel sought to have the trial court dismiss the jury panel because the prosecutor *might* use his peremptory challenges to strike all blacks from the panel. In his motion to quash the panel, Appellant clearly indicated that he wanted the panel struck because of its racial composition *before the State exercised any peremptory challenges.*

Under this point of error, Appellant clearly admits that he is not complaining of "unfairness in the manner in which the jury panel was originally selected or sent to this particular trial court." Appellant's second point of error does not comport with the grounds urged by Appellant for quashing the panel at trial. Since he complained at trial of the composition of the panel prior to the exercise of any peremptory strikes by the prosecutor, Appellant may not now urge the denial of this motion as error simply because after the State exercised its strikes no blacks remained on the jury. Furthermore, Appellant's motion to quash the panel did not raise the issue that the prosecutor had struck all blacks from the jury panel for the obvious reason that no strikes had yet been made. An issue not raised at trial may not be raised for the first time on appeal. *See Nelson v. State,* 607 S.W.2d 554 (Tex.Crim.App.1980).[1] For these reasons, we hold that Appellant's second point of error presents nothing for review and it is overruled.

■ We find that Appellant's motion for mistrial was adequate to raise the issue addressed in *Batson. Cf. Miller–El v. State,* 748 S.W.2d 459 (Tex.Crim.App.1988). This motion was made after two witnesses had been called by the State and, furthermore, was not urged until after the noon recess when the venire members not chosen to serve on the jury had, presumably, been dismissed.

The Court of Criminal Appeals has held that *Batson* does not require that the accused object to the use of racially motivated peremptory strikes by the prosecutor before the jury is sworn in cases tried prior to the Supreme Court's opinion in *Batson. DeBlanc v. State,* 732 S.W.2d 640 (Tex. Crim.App.1987); *Henry v. State,* 729 S.W. 2d 732 (Tex.Crim.App.1987); *see also Miller–El.* We must acknowledge the superior authority of the Court of Criminal Appeals in this matter and hold that Appellant has preserved the error now complained of.

It has been held that the Supreme Court, in *Batson,* envisioned that a motion to strike would be made promptly, probably before the venire was dismissed. *United States v. Erwin,* 793 F.2d 656, 667 (5th Cir.1986), *cert. denied,* 479 U.S. ——, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986). Were we writing on a "clean slate" we would hold that *Erwin,* controlled this case for two reasons. First, even in cases tried before the Supreme Court issued its opinion in *Batson,* it had long been held that similar complaints as to the composition of the jury were waived by failing to raise the issue in the trial court before the jury was sworn. *See Ex parte Watson,* 606 S.W.2d 902 (Tex. Crim.App.1980); *Gunter v. State,* 139 Tex. Cr.R. 145, 139 S.W.2d 116 (1940); *Fuller v. State,* 716 S.W.2d 721 (Tex.App.—Corpus Christi 1986, pet. ref'd). Therefore, we think Appellant's counsel could have foreseen that an objection that the prosecutor had used peremptory challenges as a means of purposeful discrimination should have been made at the first opportunity. Here, that opportunity existed prior to the jury being sworn.

Secondly, Appellant did not request that the court reporter make a record of the

**1.** Now *see TEX.R.APP.P. 52(a).*

voir dire examination. Therefore, there is no record of such proceedings available now, nor did the State have the benefit of such record at the *Batson* hearing. Lacking such a record, the State was placed at great disadvantage at the hearing almost two and one-half years after the prosecutor made the allegedly racially motivated peremptory strikes. Without such a record to review prior to the hearing, we cannot see how a prosecutor who may have conducted numerous voir dire examinations in the interim could fairly be expected to recall why he struck any particular member of the venire.

> "To establish [a prima facie case of purposeful discrimination], the defendant first must show he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact ... that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."

*Batson,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88 (citations omitted).

■ At the *Batson* hearing, the Appellant showed that he was black. The trial court found he was a member of a cognizable racial group. The evidence shows and the trial court found that there were seven blacks on the jury panel and that the State used eight of its ten peremptory challenges. The court found that the State struck all of the blacks from the panel. Only the Appellant testified at the hearing. The trial court stated in his findings that he took judicial notice of "all records and proceedings in the case" by agreement. The State declined to produce any evidence regarding the basis of its peremptory challenges at trial.

The trial court reached the following conclusions of law:

"1. The [Appellant] has raised an 'inference' of purposeful discrimination....

"2. The [Appellant] has made a prima facie case that discrimination existed, and the State has failed to come forward with a neutral explanation for its challenges.

"3. The [Appellant] is entitled to the relief sought."

The trial court found that Appellant made a prima facie case of purposeful discrimination by the State in the selection of the jury. In *Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88, the United States Supreme Court stated the following:

> "In deciding whether the defendant has made the requisite showing [of a prima facie case of discrimination], the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors."

Since we find nothing in the record to indicate that the trial court abused its discretion in so finding, we will not disturb such finding on appeal.

Once Appellant makes a prima facie case of purposeful discrimination, the State has the burden of coming forward with a racially neutral explanation for its challenges. *See Batson,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 88; *Henry,* 729 S.W.2d at 734. Since the State failed to meet this burden, we sustain Appellant's third point of error.

For the reasons stated in our prior opinion, each of Appellant's other points of

error are overruled. *Allen v. State*, 722 S.W.2d 514 (Tex.App.—Beaumont 1986).

The cause is reversed and remanded for new trial.

REVERSED AND REMANDED.