Ronald Curtis **CHAMBERS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 69609.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 25, 1989.

Rehearing Denied Nov. 22, 1989.

Richard Alan Anderson, Richard Kristin Weaver, Dallas, for appellant.

John Vance, Dist. Atty., Jeffrey B. Keck, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

**OPINION FOLLOWING REMAND FOR RETROSPECTIVE BATSON HEARING**

TEAGUE, Judge.

A jury found Ronald Curtis Chambers, henceforth appellant, guilty of capital murder and the jury answered the submitted special issues in the affirmative. The trial judge thereafter assessed his penalty at death.

On direct appeal, see *Chambers v. State*, 742 S.W.2d 695 (Tex.Cr.App.1988), although appellant presented thirteen points of error, this Court limited its discussion to the issues that concerned this pre-*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), case. *Batson* is to be applied to similarly situated cases. See *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Also see *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). *Batson* concerns the prosecutor's use of peremptory strikes to remove members of the defendant's race from serving as jurors for race-related reasons.

This Court decided in this cause that the proper thing to do, given the state of the record, was to abate the appeal to the trial court with instructions to the trial court to conduct further proceedings not inconsistent with that opinion and *Batson*. The trial court was to then forward the record of that hearing to this Court. See *Chambers v. State*, supra.

The trial judge carried out his duty in part and conducted a hearing on the "Batson" issue. However, after the record was returned to this Court, we found that the trial judge erred in refusing to consider the testimony of the prosecutor who testified at the hearing in deciding whether the State had a valid race-neutral explanation for its exercise of the peremptory strikes at issue.

In *Chambers v. State*, 772 S.W.2d 454 (Tex.Cr.App.1989), we again abated the appeal so that the trial judge could reconsider

his former "Findings of Fact and Conclusions of Law," and then forward same to this Court in a supplemental transcript. That has occurred.

In order not to unnecessarily elongate this opinion, and because we find that the trial judge's findings of fact and conclusions of law are supported by the record, we will attach same to this opinion and incorporate same by reference.

Accordingly, we reverse the judgment of the trial court and remand this cause to the trial court for proceedings not inconsistent with this opinion.

Since McCORMICK, P.J., does not believe that the standard of review in cases such as this one should be that of "supported by the record," he only concurs in the result.

DAVIS, CAMPBELL, WHITE and BERCHELMANN, JJ., only concur in the result.

### APPENDIX A

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

On January 6, 1988, the Court of Criminal Appeals remanded the above-styled and numbered cause to the Criminal District Court No. 4 of Dallas County, Texas, with instructions to hold a hearing to determine the reasons for the State's exercise of peremptory challenges against members of the Appellant's race, and thereafter, to file with the Court of Criminal Appeals relevant Findings of Fact and Conclusions of Law. On March 3, 1988, a hearing was held in the Criminal District Court of Dallas County, Texas, the Honorable Tom Ryan, Judge, sitting for the Honorable Francis Maloney, Judge Presiding. All parties appeared in person and/or by counsel. After evidence offered by the parties and arguments thereon, the Court made findings of fact and conclusions of law

which were filed in this cause on April 14, 1988.

Thereafter, the Court of Criminal Appeals, in a *per curiam* order, again abated this cause and remanded to this Court with instructions to clarify its prior Findings of Fact and Conclusions of Law, and in response thereto, the Court now makes the following Findings of Fact and Conclusions of Law:

### I.

### FINDINGS OF FACT

1. The Appellant, Ronald Curtis Chambers, is a black man. (Tr.–9).[1]

2. The Appellant had, prior to trial in this cause, filed a pre-trial motion asking that the State be prohibited from exercising peremptory strikes on members of his race for the reason that they too were black. (R.I–37).

3. Prior to the beginning of the *voir dire,* and pursuant to the Appellant's pre-trial motion, it was agreed that the race of each potential juror would be reflected in the appellate record by having the court reporter note in the record the race of each potential juror. (R.I–37; R.IV–46).

4. During the Court of *voir dire,* sixteen (16) black potential jurors were called for consideration. Of these, eleven (11) were excused upon challenge for cause by the State pursuant to TEX.CODE CRIM. PROC.ANN. art. 35.16 (1965). (R.IV–42, 44; R.VI–62, 98; R.VII–92, 99–100; R.XIV–8; R.XVIII–181; R.XXI–93; R.XXII–16; R.XV–46; R.XV–79; R.XVI–109; R.XVII–231; Tr.–12).

5. Of the remaining five potential black jurors, one, Mrs. Thelma Sanders Clardy, was excused by the parties by agreement (R.VI–99–101). The record is silent as to the reason for this agreement.

6. A second black potential juror, Ms. Ethel R. Tennell, was excused upon her claiming of a statutory exemption. (R.XV–

---

1. Throughout these Findings of Fact and Conclusions of Law, the transcription of the proceedings had at the hearing on remand held on March 3, 1988, shall be referred to as "Tr.–". References to portions of the appellate record which were judicially noted for the purposes of this hearing shall be referred to as required by TEX.R.APP.PROC. APPENDIX FOR CRIMINAL CASES, RULE 1.

80; Tr.–12). TEX.CODE CRIM.PROC. ANN. art. 35.04 (1965).

7. The remaining three (3) black potential jurors, Norrette Cereese Johnson, Loretta B. Rooks and Sandra A. Harrison, were all excused when the State exercised a peremptory challenge on each pursuant to TEX.CODE CRIM.PROC.ANN. arts. 35.-15 *et seq.* (1965). (R.VI–28; R.IX–68; R.XIV–36; Tr.–12).

8. In the case of both Ms. Rooks and Ms. Harrison, the exercise of a peremptory followed the State's unsuccessful efforts to have the potential juror struck for cause. (R.IX–53; R.XIV–24).

9. In each instance where the State exercised a peremptory challenge to excuse a black potential juror, the Appellant objected to the use of a peremptory strike to excuse the juror, asked that the prosecutor be examined on the issue of use of peremptory strikes to excuse black jurors, and, as a proffer to justify the request to be allowed to examine the prosecutor on the exercise of the strike, advised the trial court that if permitted to question the prosecutor, the Appellant believed that he could establish that the veniremen were stricken due to their race. (R.VI–38–39; R.IX–68–68; R.XIV–36–37). This Court refused to permit the prosecutor to be examined on this issue. The Appellant's proffers that he expected the examinations to establish that the strikes were racially motivated were not challenged by the State.

10. Mr. Paul Macaluso, who at the time of the trial was an Assistant District Attorney for Dallas County, Texas, exercised the State's peremptory challenge against juror Harrison. (R.XIV–24).

11. Mr. Andy Beach, and Assistant District Attorney for Dallas County, Texas, exercised the State's peremptory challenge against jurors Rooks and Johnson. (R.VI–28; R.IX–68).

12. In addition to the black potential jurors stricken by the State peremptorily, the State successfully challenged two black potential jurors (Thomas Johnson & Sharon E. Curtis) and unsuccessfully attempted to challenge a third potential black juror (Loretta Rooks) on the basis that they would not consider the *minimum* punishment in the event that the Appellant was convicted of the lesser included offense of murder. (R.XVIII–146–181; R.XIV–47–49; R.VI–9–69). The State made no corresponding effort to challenge potential white jurors on the basis of their willingness to consider the minimum punishment for a lesser included offense.

13. The State called one of the two prosecutors who conducted part of the *voir dire* in this cause, Paul Macaluso. Mr. Macaluso expressly stated that due to the passage of time since the trial of this cause, he could not remember these jurors, and more specifically, he could not recall why he exercised peremptory strikes to eliminate these black jurors from the Appellant's jury. (Tr.–45, 51, 59, 71, 80–81, 87–88, 94–95, 96, 125–128).

14. Mr. Macaluso testified that although he could not remember why he struck the jurors at issue, he had, prior to the hearing on March 3, 1988, reviewed the transcription of the *voir dire* proceedings regarding the three jurors stricken and their respective juror questionnaires. (Tr.–33–34). He then testified, over objection, that *in general* he found certain answers in the *voir dire* and the juror questionnaires which were of such a nature as would, in most, if not all cases, result in his striking similarly situated jurors in other trials.

15. Mr. Macaluso did not testify from a refreshed recollection after reviewing the materials from the original trial. Though he reviewed the materials, they did not refresh his independent recollection, (Tr.–45, 51, 59, 71, 80–81, 87–88, 94–95, 96, 125–128); he was not speaking from memory thus revived. He had no personal knowledge concerning anything which happened at the trial at issue at the time that he testified at this hearing.

16. Mr. Macaluso testified that he had never stricken a potential juror solely on the basis of race. (Tr.–51, 67, 78).

17. Mr. Macaluso did not exercise all of the strikes at issue, although he did profess

to have some input into the decision to strike the juror. (Tr.–90–93).

18. Mr. Beach was available to testify, however, he was never called by the State. (Tr.–7–8).

19. The State's *voir dire* questions of members of the accused's race were in no way distinctive, nor did they elicit any information which would, on its face, justify the use of a peremptory challenge on the jurors.

20. The State exercised its peremptory strikes to exclude all members of the accused's race from the jury who were not successfully challenged for cause by the State. As a result, the Appellant, a black man, was tried by an all white jury. (Tr.–18).

21. All of the testimony and evidence proffered by the parties at the hearing March 3, 1988, was admitted into evidence for purposes of the hearing.

22. All of the evidence admitted at the hearing was "considered" by the Court in reaching its conclusions and in preparing its heretofore filed Findings of Fact and Conclusions of Law.

23. Specifically, the testimony of Paul Macaluso was both admitted into evidence and "considered" by the Court.

24. After considering all of the evidence admitted at the hearing, and after evaluating the credibility of the witness and giving due weight to the evidence proffered by the State, the Court was, and still is, of the opinion that the State has failed to meet the "clear and reasonably specific" criteria constitutionally necessary to rebut the Appellant's *prima facie* case of racially discriminatory exercise of peremptory strikes by the State.

## II.

### CONCLUSIONS OF LAW

1. The Appellant established a *prima facie* case of racially discriminatory exercise of peremptory strikes by the State. See: *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Tompkins*

*v. State*, 774 S.W.2d 195 (Tex.Crim.App. 1987); *Whitsey v. State* (Tex.Crim.App. No. 1121–87 delivered May 10, 1989).

2. The State has failed to rebut the Appellant's *prima facie* case of purposeful racial discrimination as to each of the three black jurors on who it exercised peremptory challenges since the State has failed to establish a "clear and reasonably specific" racially neutral explanation for the exercise of the aforesaid strikes. See: *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Tompkins v. State*, 774 S.W.2d 195 (Tex.Crim.App.1987); *Whitsey v. State* (Tex.Crim.App. No. 1121–87 delivered May 10, 1989).

SIGNED this 18th day of July, 1989.

(s)Tom Ryan
JUDGE PRESIDING